MARY DAVIES, as Administratrix of JOHN B. DAVIES, Deceased, Respondent, v. THE PELHAM HOD ELE-VATING COMPANY, Appellant.

*Negligence — an appliance defective and dangerous to life — privity of contract is not essential to liability — change in the appliance made at the request of the party injured — its effect on his right to recover.*

In an action brought by Mary Davies, as administratrix of her husband, John B. Davies, against the Pelham Hod Elevating Company to recover the damages resulting from her husband's death, through its alleged negligence in performing a contract made by it with Hopper & Co., it appeared that a derrick, rigged with a steel-wire rope, had been furnished to Hopper & Co. by the Pelham Hod Elevating Company, and was safely operated for several weeks; that about three weeks before the accident occurred John B. Davies, who, as the representative of Hopper & Co., took charge of the work, which consisted in laying a foundation for a building, objected to the wire rope and wished to have a manilla rope substituted, to which Mr. Hopper assented, and the Pelham Hod Elevating Company thereupon furnished a manilla rope, of the size which Davies required, and this was adjusted to the derrick in his presence and with his help.

In setting a heavy stone the rope broke and Davies was killed, although it appeared that equally heavy stones had been successfully laid with the manilla rope.

Upon an appeal by the defendant from a judgment in favor of the plaintiff:

*Held*, that although there was no privity of contract between John B. Davies and the defendant, his administratrix was not debarred by that fact from a recovery.

That as the defendant knew the use to which the derrick was to be put, and, consequently, whether the rope was or was not insufficient and improper, and as the jury might have found that the appliance was dangerous to life, no privity of contract was necessary to make the defendant liable to John B. Davies.

*Devlin* v. *Smith* (89 N. Y., 477) followed; *Burke* v. *De Castro, etc., Sugar Refining Company* (11 Hun, 354) overruled.

That, inasmuch as the defendant furnished the identical derrick which Hopper & Co. selected, provided with a wire rope which answered every purpose until discarded, and as a change was made by John B. Davies, in charge of the derrick, to a rope of his own selection, the defendant was not guilty of any negligence and the plaintiff could not recover.

APPEAL by the defendant, the Pelham Hod Elevating Company, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 28th day of November, 1891, upon a verdict for the plaintiff for $2,000, after a trial at the New York Circuit before the court and a jury ; and also from an order of said court denying a motion for a new trial.

The action was brought to recover the damages resulting from the death of one John B. Davies, who was killed while operating a derrick furnished to the employers of the decedent by the defendant.

Upon the trial Mr. Hopper testified that he was the contractor for the construction of the building, in the erection of which the accident happened, and that the derrick in question was delivered to him in the same condition as it had been before when he saw it working across the street, as far as he knew.

*George S. Coleman*, for the appellant.

*William H. Arnoux*, for the respondent.

O'BRIEN, J.:

This action was brought to recover the sum of $5,000 for the loss of the life of the plaintiff's intestate, which was alleged to have been due to the negligence of the defendant in fulfilling its contract with one Hopper & Company, and in furnishing an insufficient derrick and appurtenances. Defendant's contract was to furnish a derrick with ropes, blocks, engine and engineer to operate it on the premises

on the north-east corner of Fifty-ninth street and Fifth avenue, to be used in hoisting and placing in position blocks of granite that were to be used as foundation stones and piers of the hotel now known as the Astor Hotel. Some question upon the pleadings is presented as to whether or not the defendant knew the purpose for which the derrick was to be used, but we think that the construction given by the learned trial judge to the pleadings was correct.

The evidence shows that the contract was made with reference to a derrick that Mr. Hopper had previously seen in operation upon a building directly opposite to the one in question. This same derrick, rigged with a steel-wire cable, was delivered and thereafter safely operated for some weeks. About three weeks before the accident the plaintiff's intestate took charge of the work and control of the derrick as Mr. Hopper's representative. He found fault with the cable wire rope and desired to have it changed for manilla rope. Mr. Hopper authorized him to make any changes he might deem proper as he was in entire control of the derrick. At the request of the intestate the change was made in his presence and with his assistance, defendant furnishing a new manilla rope four and one-quarter inches in circumference, and being one-quarter inch larger than, according to the testimony of one of the witnesses, was asked for by Davies. On or about the 10th of June, 1891, the derrick had lifted a granite block weighing five and one-half tons on one of the piers; it had a mate-stone. It was found not to have a level bed. Davies gave orders to raise it off its bed. It was raised two or three inches when the manilla rope, the toppinglift, broke, precipitated the granite block and the boom, which the rope held in position, to the ground. The boom in its descent struck plaintiff's intestate on his head, causing injuries from which he soon after died. Evidence was offered by plaintiff tending to show that the rope was unfit, of insufficient strength to lift these massive pier stones. On the other hand, some of plaintiff's witnesses and others, produced by defendant, testified that this rope was used in raising large stones for about two weeks; fifty-five stones were raised and set in place with it, about a dozen of these were as large as the stone in raising which the rope broke, and one was much larger.

Were there no other question in the case but that presented by the conflicting evidence as to the sufficiency of the rope, the jury

having found in favor of the plaintiff, the verdict could not be disturbed. The appellant insists that the complaint should have been dismissed as it alleged no cause of action against defendant in favor of the plaintiff, the charge being negligence in fulfilling a contract with Hopper & Co., by reason of which alleged negligence plaintiff's intestate was injured and subsequently died. It is contended that, because there was no privity of contract or privity of any kind between plaintiff's intestate and the defendant, no recovery could be had. In support of this view we are referred to the case of *Burke* v. *De Castro, etc., Sugar Refining Company* (11 Hun, 354), where it was held that the plaintiff could not maintain an action against the defendant based upon the negligence of the defendant in furnishing an unsafe apparatus for hoisting sugar, which the defendant, under a contract, had allowed the plaintiff's employer to use and had hired to him for the purpose of unloading a cargo of sugar from a vessel.

We think, however, that the case of *Devlin* v. *Smith* (89 N. Y., 477), extending the principle of the case of *Thomas* v. *Winchester* (6 id., 397), must be regarded as having overruled the case of *Burke* v. *De Castro, etc., Sugar Refining Company*. In this latter case (*Devlin* v. *Smith*), it was said, in speaking of the liability of one who undertook to build a scaffold ninety feet high for the purpose of enabling the workmen of one Smith to stand upon it and paint the interior of the dome of a court-house, that the builder of the scaffold was liable for any neglect or negligence in its construction which would cause it to give way and result in injury to an employe or servant of Smith's. As was said in that case, commenting upon *Coughtry* v. *The Globe Woolen Company* (56 N. Y., 124) · "The deceased was not a party to that contract, and the same argument was made as is urged here on the part of the defendant, that the latter owed no duty to the deceased. But this court held that, in view of the facts that the scaffold was upwards of fifty feet from the ground, and unless properly constructed was a most dangerous trap, imperiling the life of any person who might go upon it, and that it was erected for the very purpose of accommodating the workmen, of whom the person killed was one, there was a duty towards them resting upon the defendant, independent of the contract under which the structure was built, to use proper diligence in its construction " In view of the uses to which admittedly the defendant

knew the derrick was to be put, we think that the case of *Devlin* v. *Smith* is controlling.

Assuming, therefore, that proof of knowledge by defendant of the uses to which the derrick and ropes connected therewith were to be put, coupled with the fact that they were insufficient and improper, thus making them eminently dangerous to life, was sufficient, within the principle of the case cited, to render the defendant responsible for injury to plaintiff's intestate, in the absence of any privity between them, there still remains in the case another feature which we think fatal to plaintiff's recovery. The defendant's contract was to furnish a particular derrick properly rigged. In fulfillment of this obligation, the very derrick contracted for was erected, supplied with a steel-wire rope, which, as shown by the evidence, answered all purposes until, at the request of plaintiff's intestate, it was discarded and the manilla rope substituted. Whether the wire rope had a flaw in it or not, as testified to by one of the witnesses, there is no proof to negative the view that a perfect wire rope would have answered the purposes and uses to which the derrick was to be put. It was proved that the deceased had control of the derrick, and authority to change and to select or reject any or all ropes. The kind of ropes he used was entirely under his control. Had he placed the obligation upon the defendant of selecting a rope suitable for the purpose, a failure to discharge this obligation might have rendered the defendant liable. But where, as in this case, the plaintiff's intestate insisted upon a change from the steel-wire to the manilla rope, and when the rope, as furnished by the defendant, in all respects, was such as ordered, and was one-quarter-inch larger than the intestate thought sufficient, it is difficult to understand in what respect defendant was negligent after supplying to plaintiff's intestate the very kind of rope that he ordered. While, therefore, the defendant's original contract may have been to furnish a rope sufficient to do the work required, this obligation was discharged by supplying the steel-wire cable with which the derrick was operated for several weeks, and up to the time that, by reason of some flaw he discovered therein, or acting upon his own judgment as to the best kind of rope to be used, the plaintiff's intestate directed the steel-wire cable to be removed

and a manilla rope substituted. It thus appears that, in accordance with the requirements of plaintiff's intestate, to whom authority was given, and who had a right to change the rope, the defendant, in compliance with the request and order so given, delivered the manilla rope, which the evidence in the case was directed to show was insufficient for the uses to which, on that particular building, the derrick was to be put. We are of the opinion that the substitution by plaintiff's intestate of his own judgment for that of the defendant, in respect to the kind of rope that should be used, is a complete answer to the claim made of negligence as against defendant in having supplied him with the very thing that he ordered, and from the use of which his injuries were received.

No motion was made to dismiss the complaint upon this ground, but, in various forms, it was presented to the court in the shape of requests to charge the jury, which were refused by the learned trial judge, and an exception to such refusal taken.

We are of opinion that, had a motion been made to dismiss the complaint at the close of the evidence, it should have been granted; and that the error in the refusals to charge propositions of law, to which the defendant was entitled, was such error as to require a reversal of the judgment and a new trial, with costs to appellant to abide the event.

PATTERSON, J., concurred; VAN BRUNT, P. J., concurred in the result.

Judgment reversed and new trial ordered, with costs to the appellant to abide event.