MARY DAVIES, as Administratrix of JOHN B. DAVIES, Deceased, Respondent, *v.* THE PELHAM HOD ELEVATING COMPANY, Appellant.

*Negligence— the substitution by a person injured of his judgment, for that of another, relieves the latter from the charge of negligence in respect to the subject of such judgment.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant, it was proved that the defendant was in the habit of furnishing derricks and appurtenances for the use of buildings, and also furnished the boilers to run the engine attached to the derrick. The plaintiff's intestate was employed by the contractor erecting the building, who had exclusive control of the derrick and its management.

While the plaintiff's intestate and others were engaged in lifting a stone, with the aid of the derrick, a rope broke and the boom fell, striking him and causing his death. The first topping lift used had been a steel wire cable, but a manilla rope had been substituted for it before the accident, and it was charged that using this manilla cable, which was not of sufficient strength for the purpose for which it was used, constituted negligence on the part of the defendant.

There was no proof offered that the rope was defective in quality or material, but the plaintiff's contention was simply that it was too small for the purpose for which it was used.

It was admitted that the rope broke because it was of insufficient strength by reason of its size. It was further shown that the change from the steel to manilla rope had been made at the request of the plaintiff's intestate, and that he and an employee of the defendant had placed it upon the derrick; that the reason given by the plaintiff's intestate for the change was that he believed that the manilla rope was safer; would give warning before anything happened, and that the wire rope would not. The rope was ordered and inspected by intestate, and approved by him before it was used.

*Held*, that the intestate having assumed to be an expert and to know the kind of rope best suited to his purpose, and having directed the change, and accepted the new one, knowing its size, and presumably its estimated strength, was as guilty of negligence as was the defendant, if either could be said to have been negligent ;

That the substitution by the plaintiff's intestate of his own judgment for that of the defendant, in respect to the kind of rope which should be used, was a complete answer to the claim of negligence on the part of the defendant, he having supplied the plaintiff's intestate with the very thing which he ordered, and from the use of which his injuries were received.

APPEAL by the defendant, The Pelham Hod Elevating Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of May, 1893, upon the verdict of a jury for $5,000 damages after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 1st day of May, 1893, denying the defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*George S. Coleman,* for the appellant.

*William H. Arnoux,* for the respondent.

FOLLETT, J. :

This action was brought to recover damages occasioned by the death of plaintiff's intestate, caused, it is alleged, by the negligence of the defendant's employees. The defendant is a domestic corporation engaged in supplying contractors and builders with derricks, elevators and pumps. It furnished the builders of the Savoy, which is on the southeast corner of Fifth avenue and Fifth-ninth street, with a boom derrick and appurtenances. Afterwards the New Netherland, which is on the northeast corner of Fifth avenue and Fifth-ninth street, was erected. Isaac A. Hopper & Co. had a contract for constructing the masonry, and hired, about April 16, 1891, of the defendant the derrick and its appurtenances which had been used at the Savoy. The defendant also furnished a steam engine which supplied power to operate the derrick and an engineer who ran the engine, for which it received fifteen dollars per day. Isaac A. Hopper & Co. had exclusive control of the derrick and of its management. The plaintiff's intestate was employed by Isaac A. Hopper & Co. as a foreman and was placed in charge of the derrick.

The topping lift of a derrick is the rope connecting the end of the boom with the mast or upright and by means of which the boom is raised and lowered.

On the 10th of June, 1891, while the plaintiff's intestate and others were lifting with the derrick a foundation stone weighing between eleven and twelve thousand pounds, the topping lift broke and the boom fell, striking plaintiff's intestate on the head, from the

effects of which he died the next day. It is not asserted that any part of the derrick or its appurtenances was defective except this rope or cable called the topping lift. When the plaintiff's intestate began using the derrick the topping lift was a steel wire cable seven-eighths of an inch in diameter, which was used until May twenty-second, when a new manilla rope or cable four and one-fourth inches in circumference, was substituted and used until June tenth, when it broke.

The precise and only cause of action sought to be established on the trial was that the defendant negligently furnished the manilla cable which was not of sufficient strength for the purpose for which it was used, and that the decedent did not, by his own neglect, contribute to the accident. There is no evidence that the manilla rope was defective in quality, material or in the mode in which it was made, but the plaintiff's contention is simply that it was too small for the purpose for which it was used. Upon this issue considerable evidence was given on both sides, but it was found for the plaintiff, and it must be regarded as settled, so far as this review is concerned, that the rope was too small for the purpose for which it was used. When this case was before this court on the first appeal (65 Hun, 573) it was held on the authority of *Devlin* v. *Smith* (89 N. Y. 470) that the defendant would be liable for the damages occasioned by the death of the plaintiff's intestate, in case the evidence justified a verdict that defendant negligently furnished a rope of insufficient strength, and that the intestate, by his own neglect, did not contribute to the accident. This question is not an open one in this court.

It is asserted in behalf of the plaintiff that the rope broke because it was of insufficient strength by reason of its size. For the purpose of the present contention it must be conceded that this proposition is true.

The important questions involved are: (1) Was it negligent in the defendant to furnish this rope, and (2) did the intestate by his own negligence contribute to the accident? The plaintiff asserts that sufficient evidence was given to make these questions issues of fact which have been settled in her favor by the jury, while the defendant asserts that the evidence is insufficient to justify the submission of these questions to the jury, and that its motion for a nonsuit

should have been granted, and also that the verdict is contrary to the weight of evidence, and that its motion for a new trial should have been granted. The undisputed evidence is that from the time when the derrick was first set up by Isaac A. Hopper & Co. until May twenty-second a steel wire rope or cable was used for the topping lift, and that on the date last mentioned the manilla rope or cable which broke was substituted at the request of the plaintiff's intestate. It is true that he did not request that this particular rope be substituted, but that a manilla rope be substituted, and he gave his reasons why. The rope or cable which broke was taken by one of defendant's employees to the plaintiff's intestate, and they together placed it in the derrick, or, in the language of a witness, " rigged the derrick with it."

It was testified by witnesses called by both sides that a manilla rope was substituted for the wire cable at the special request of plaintiff's intestate; that he saw the manilla rope which broke before it was substituted and assisted in making the change. About this there is no dispute nor conflict in the evidence.

Patrick White, a witness called by the plaintiff, testified : " I was present when the rope came. Mr. Davies was there. I had a talk with Mr. Davies about the character of the change to be made in the rigging. He said he was going to get a manilla rope put in, and they would have the wire rope taken out. That is all he told me. He said he thought the manilla rope was better, because it was safer. He said if it parted it would give you warning, and steel wire rope would break short. Q. So it was Davies' own suggestion to you ? A. Yes, sir."

This witness further testified : " I remember the circumstances of the putting in of the manilla rope. I saw the rope brought there. The condition of it was new; it was in a coil; a brand new rope in a coil. I do not know the size of that rope; they said it was a two-inch rope. When the rope was put on the derrick Mr. Davies, the man who was injured, was present. He said he was going to stay there to see it put in."

This witness also testified : " Q. Now, you have spoken about the wire rope that was in use on this derrick. When was this change made from a wire rope to a manilla rope ; about how long before the accident ? A. I guess about two weeks. I saw the wire rope that was

used there at the time the change was made, or just before the change was made. Mr. Davies might be working on the job two weeks, or around that time, before this change was made from a steel rope to a manilla rope. The topping lift was changed to a manilla rope. The steel wire that was taken out was the one that was in the fall rope. In raising and lowering these granite blocks it had to drag on the ground. At the time the change was made the outside of it was a little chafed from running along the ground. Some of the wires were crooked. The steel wire rope that was used to raise and lower the stone, known as the fall, that was taken out, and the wire rope that was used for a topping lift, that was taken out and placed in and used as the fall instead of the topping lift, and a new manilla rope was put in and used as a topping lift from that time. The wire rope that had no chafing on it, and didn't have any breaking of the wires in it, was substituted and used from and after that time as the rope to raise and lower the granite blocks."

Ebenezer Davies, a brother of the intestate, testified : " Q. What did your brother say to you about the reason for changing from wire rope to manilla ? A. He said there was a flaw in the wire rope. He said he believed manilla rope gave warning before anything happened, and that wire rope would not. That it would snap all at once."

Mr. Isaac A. Hopper, the employer of the intestate, was called as a witness for the defendant, and testified : " I had some conversation with Mr. Davies in regard to making a change of rope in the topping lift; that was about two days after he was there; the second day, I think, after he was in charge of the derrick; I made my usual visit to the building and had general conversation with Mr. Davies, and, after a while, he said to me, ' I wish you would step over to the derrick; there is something I want to call your attention to.' I stepped over about ten feet away from the foot of the derrick, and he picked up one of the wire cables and said to me, ' Look at that.' I said, ' Look at what ? ' He said, ' Look at that spot on that cable.' I said, ' What of it ? ' He said, ' I think that is a weak spot.' I said, ' It don't appear so to me ; it looks like a mud spot.' He said, ' No, boss ; I think that is a weak spot in that cable.' I said, ' John, if you have any doubt about it there will be no risk. You tell Henry, our timekeeper, to telephone to Mr. Pelham to come right up here, that you want him, and you just show him this and

First Department, February Term, 1894.        [Vol. 76.

tell him to take this cable out and put in another one.' So he said, 'Very well, sir.' Q. Do you remember which cable that was, whether it was the one that was in the topping lift ? A. My recollection is it was the topping lift that I understood he was to change. I saw him the next day. When I went there the next day I found a manilla rope had been substituted for the wire cable in the topping lift. I asked Mr. Davies what it meant. I expressed surprise at seeing the change made, and I asked him what it meant, and he told me as near as I can remember his words — he said to me : 'Don't say anything, boss, I know what I am doing; now I have got what I want.' I said to him, 'What do you mean by that, John ? ' And he said, 'I mean that a manilla rope is the best rope for this purpose,' and I asked him why, and the answer he made me was that if a manilla rope was going to give, that there would be some warning, while with a wire cable, that if there was anything to give there, it would snap like a pipe stem, and there would be no warning, and he said, 'Now don't make any objections, boss, for I know what I am doing now.' So I told him ; I said, 'John, be careful. I don't want any one hurt on this job,' and I left him at that. The derrick was in his charge."

William A. Smith, an employee of the defendant, who, at the request of Davies, sent for the manilla rope, testified : " I went there the day the rope was changed. First I saw the engineer. I had a conversation with him ; as the result of that conversation I went and had a conversation with Mr. Davies, the foreman ; he wanted the wire cable changed to a manilla rope ; he said that he preferred a manilla rope, as the wire rope might give way without any warning, and by using manilla he thought he would have warning in case that it was liable to break. I told him I thought he was making a mistake ; that a steel cable was preferable in my judgment. He said he would sooner have a manilla rope. He insisted upon having manilla. As a result of that conversation I went around to the New York Cable Company's store in Fifty-eighth street and telephoned to our office in West Twenty-sixth street. * * * I had further conversation with Mr. Davies after that in regard to the rope. It was some few days after the change had been made. He said he was satisfied with the change ; that he had what he wanted."

Mr. Brown, an employee of the defendant, testified: "I got the rope that I took up there in the shop. I cut it off from a new coil myself, and put it in the wagon. I saw Mr. Davies and had a conversation with him. I brought the rope up there, and I was going to leave it on the sidewalk, and he told me there was no one around to put it on, and asked me to put it on for him, and I told him I would. I took off the wire rope that was onto the blocks, and put on those two new blocks and changed the rope. Mr. Davies stayed there all the time. Q. Did he say anything to you about making the change from a wire to a manilla rope? A. Nothing more; only he looked at it and said, 'That is the stuff. I would sooner have that one than that wire.' I took off the blocks that were used with the wire rope and put on others. I took those others up with me — two double blocks. When I rigged the manilla rope there were in the topping lift five parts all told."

Mr. Newton, who ran the engine, testified that he had a conversation with the intestate on the day after the ropes were changed. "He came up and said, 'Good morning, Mr. Engineer; I feel satisfied this morning.' He said he always felt safer with a manilla rope than with a wire rope, because it gave so much more warning."

The foregoing extracts from the testimony conclusively show that the plaintiff's intestate assumed to be an expert in such matters, or asserted by his conduct and language that he knew which kind of a rope was best for the topping lift. He exercised his judgment, which the defendant acquiesced in though not recommending the change. These extracts also show that the substitution of the manilla rope for the steel wire cable was made at the special instance and request of the plaintiff's intestate; that he helped make the change; saw and handled the rope before it was used, and exercised his own judgment in respect to the substitution. A rope is not an intricate piece of machinery, the details of which are not readily comprehended, but it is a simple implement, the strength of which is learned, approximately, by referring to tables which are given in the hand books of mechanics. The intestate knew the size of the stones which were being moved and understood approximately the strain which the derrick was required to sustain. During the eighteen days which elapsed between the date when the substitution was

made and the date when the accident occurred, the intestate had the entire supervision of the derrick and knew the size and number of the stones moved, and it was his duty to see that the cable was not used after it had been weakened by use. The intestate, having assumed to be an expert and to know the kind of rope best suited to his purpose, and having directed the change and accepted the new one, knowing its size and presumably its estimated strength, was as guilty of negligence as was the defendant, if either can be said to have been negligent.

When this case was before the court on the former appeal it was said : " We are of the opinion that the substitution by plaintiff's intestate of his own judgment for that of the defendant, in respect to the kind of rope that should be used, is a complete answer to the claim made of negligence as against defendant in having supplied him with the very thing that he ordered, and from the use of which his injuries were received."

That language is as applicable to the present record as to the former one, and, under the evidence presented in this record, the court erred in refusing to nonsuit the plaintiff, and the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order reversed, new trial granted, with costs to appellant to abide event.