(98 App. Div. 261)

CONNORS v. KING LINE, Limited.

MONAHAN v. SAME.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. SHIPPING—DUTY TO FURNISH APPLIANCES.

    Where a charter party provided that the captain should render all customary assistance with the tackle and boats, and a clause providing that the owner should supply rope, falls, and slings for handling cargo was stricken out, the owner was nevertheless obligated to furnish a top-

ping lift supporting a boom, the use of which was necessary in discharging cargo, and was liable for injuries to a stevedore's employé caused by a defect in it.

2. SAME—INJURY TO STEVEDORE.
   Where the owner of a vessel negligently permitted the use of a defective topping lift in unlading, he was liable to a stevedore's employé injured because of the defect, even though the owner was not required by the charter party to furnish the appliance.

3. SAME—NEGLIGENCE—EVIDENCE.
   In an action against the owner of a vessel for injuries to a stevedore's employé caused by the breaking of a topping lift while raising a skid, evidence *held* not to show, as a matter of law, that the stevedores were negligent in selecting the topping lift, instead of a chain span, for the purpose for which it was used.

Appeals from Trial Term, Kings County.

Separate actions by Fanny Connors, as administratrix of Barney Connors, deceased, and by Margaret Monahan, as administratrix of John J. Monahan, deceased, against the King Line, Limited. From judgments for plaintiff in each action, and from orders denying motions for new trials, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

J. Parker Kirlin (Charles R. Hickox, on the brief), for appellant.
Herbert C. Smyth (Sumner B. Stiles, on the brief), for respondents.

HOOKER, J. The appeals in these cases are from judgments in favor of the plaintiffs, and orders denying motions in the respective actions for new trials. The intestates in both cases received injuries in the same accident, from which they died. The plaintiffs are their respective administratrices, who seek to recover damages for the deaths, claiming they were caused by the negligence of the defendant. The cases were tried before the same jury, and on practically the same evidence, except that dealing with the earning capacity, habits, and health of the different intestates.

The defendant had chartered to one Munson the steamship King Gruffydd, and this vessel was preparing to discharge her cargo upon a lighter which had been placed alongside for that purpose. The intestates were employés of the stevedore, and were present at the time of the accident to take part in his work. The port boom at the forward hatch had been rigged with the topping lift, whose more particular description will follow, and by means of a fall from the boom a skid was being raised from the lighter to the rail of the vessel to assist in the discharge of the cargo from the latter to the former. The topping lift was shackled to the deck, and from there passed through a block on the mast, and out to the boom. One end of the skid had been raised a short distance, when the topping lift parted, precipitating the boom and skid, which fell in such a manner that the intestates received injuries from which they died. The topping lift was a wire cable. In one end an eye had been inserted by bending the cable around a metal ring concave on its outer periphery, and splicing the end into the cable

just above the ring. The cable gave way at the point where this splice was made. To guard against the liability to retain water and the corrosive action of rust at the point where the splice is made, it is usual to wrap bagging saturated with oil around the place, and then the whole is served with spun yarn. An examination of the portion of the cable within this service showed that the small wires had been so far corroded away by the action of rust upon them that the tensile strength was not over 25 per cent. of the normal. The jury has evidently believed the evidence to the effect that the life of such a cable as this was from three to five years, in ordinary usage. The use to which this cable was put, however, was extraordinary. Instead of being stowed away in a place where it would have been free from the action of the elements and the corrosive influence of salt water, it had been for months hung from the rigging of the foremast, the lower end shackled to the deck as it was at the time of the accident, so that water from passing storms and the salt spray which dashed over the bows of the vessel in ordinary seas came in contact with the cable, and had trickled down into the body of the service, and under its protecting cover. This topping lift belonged to, and there is evidence to show that it was actually supplied by, the ship. The seventh paragraph of the charter party provided that "the captain shall prosecute his voyages with the utmost dispatch, and shall render all customary assistance with ship's crew, tackle and boats"; and there is abundant evidence tending to show that it was the custom under similar circumstances for the ship to supply whatever tackle and rigging was necessary to set the boom for the purpose of discharging the cargo. If such is the fair construction to be given to that section of the charter party, much difficulty is at once eliminated from the case; and this is, we think, the true construction. The appellant lays special stress on the fact that the fourteenth subdivision is stricken out. Before its erasure it read, "Owners to supply rope, falls and slings, as customary in the West India trade for handling cargo up to three tons weight." It is urged that it is competent for the court to consider the deleted clause in determining what the intention of the parties was as to that subject in making the deletion. We cannot believe, however, that a reasonable interpretation of the evidence in relation to the uses to which this topping lift was put would have brought it within the contemplation of the provisions of the fourteenth subdivision, had that been allowed to remain in the contract. The topping lift was as much a part of the permanent equipment of the vessel as the boom itself, to which it was attached, or the mast from which it took its support. Without some appliance to hold up the boom, the latter was useless. The mere fact that a chain span was also provided to support the boom does not deprive the topping lift of its character as a permanent appliance to the vessel. The chain span was used for raising heavy loads; the topping lift, for lighter. It is reasonable to suppose it was more difficult to make fast with the chain span than with the topping lift, on account of the greater weight and bulk of the former. Rope, falls, and slings, however, were of quite a

different class; and the character of such appliances as these might well be changed by the charterer as often as he thought necessary in dealing with the many different kinds of cargo, or the trade in which he had engaged his vessel would require.

If the owners of the vessel, then, undertook to supply the appliances to be used in making ready the boom, and the utensils it furnished were unsafe, and a reasonable inspection could have disclosed the condition, the defendant was negligent in permitting the use of such appliances, and was liable to one who, in the ordinary course of business on the vessel, was injured by its failure to perform the work for which it was intended. The recovery may be sustained, however, in this branch of the case, upon another principle of law, namely, that where the defendant furnishes appliances to be used for a particular purpose, with knowledge of such use, he is liable for a defect therein created by his own negligence, or negligently permitted to exist, where such negligence renders the appliance dangerous to life and limb of those who may use the same. Such liability exists independent of any privity of contract between the parties. In an exceedingly fair and impartial charge, the court left it to the jury to say whether or not it was negligence on the part of the defendant to permit the use of this topping lift without adequate examination, where the same had been for many months subject to the influence of the elements, and had been allowed to remain in such a place that a deteriorating agent had been allowed to trickle and seep into the splice under the service; and they have found that it was. It must be apparent to every one who knows of the uses to which such instruments are put that a defective or unsafe cable of this sort is a menace to life and limb. Yet the evidence is abundant that the defendant permitted its use, and the case is within the doctrine of those patterned upon Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455. In Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311, the plaintiff's intestate was killed by reason of the breaking of a scaffold upon which he was working, 90 feet from the ground. The court said:

"As a general rule, the builder of a structure for another party, under a contract with him, or one who sells an article of his own manufacture, is not liable to an action by a third party, who uses the same with the consent of the owner or purchaser, for injuries resulting from a defect therein caused by negligence. The liability of the builder or manufacturer for such defects is, in general, only to the person with whom he contracted. But notwithstanding this rule, liability to third parties has been held to exist when the defect is such as to render the article in itself imminently dangerous, and serious injury to any person using it is a natural and probable consequence of its use. As, where a dealer in drugs carelessly labeled a deadly poison as a harmless medicine, it was held that he was liable not merely to the person to whom he sold it, but to the person who ultimately used it, though it had passed through many hands. This liability was held to rest, not upon any contract or direct privity between him and the party injured, but upon the duty which the law imposes on every one to avoid acts in their nature dangerous to the lives of others. Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455."

Although, in Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387, the scaffold was erected under a contract between the

defendant and the employés of the deceased, the latter was not a party to that contract, and the argument later used in the Devlin Case controlled in that decision; and it was held that a scaffold upwards of 50 feet in height was in itself, unless properly constructed, a danger, in imperiling the lives of persons who might go upon it, and, irrespective of any contractual relationship, the defendants were liable to the deceased for the failure to use proper diligence in its construction. The plaintiff in Mason v. Tower Hill Co., 83 Hun, 479, 32 N. Y. Supp. 36, was, as were the deceased workmen in this case, employés of the stevedore, who had contracted with the defendant to discharge a cargo from the latter's steamship; and defendant furnished a span whose defective condition caused it to break, injuring the plaintiff. The late General Term, although the plaintiff was not in the employ of the defendant, reversed the judgment dismissing the complaint, and held that the evidence presented questions which should have been submitted to the court under the principle of the cases we have cited. See, also, Connors v. Great Northern Elevator Co., 90 App. Div. 311, 85 N. Y. Supp. 644; Thomas v. Henges, 131 N. Y. 453, 30 N. E. 238; Davies v. Pelham Hod Elevating Co., 65 Hun, 573, 20 N. Y. Supp. 523.

The contention that, because the selection of the topping lift was made by the stevedores, the risk was upon them, is, we think, untenable. The dangerous part of the structure of the topping lift, it is to be remembered, was under the service covering the defect, and could not have been disclosed upon such reasonable examination as could have been charged to those who put it to use. The individual loads which it was expected would devolve upon this topping lift in unloading the vessel were all somewhat over a ton each. The skid which was being raised at the time of the accident weighed approximately a ton and a half; the jury may have believed the evidence which tended to show that the lift gave way only when the skid came in contact with the overhang of the beading at the rail of the vessel, instead of believing those witnesses who said that the fall occurred while there was no such contact; yet, in any event, the strain on the topping lift could not have been greater than the maximum capacity of the winch, namely, three tons. It seems to be undisputed that the breaking strain of this topping lift, in usually good condition, was anywhere from six to twenty or thirty tons, and it would be quite improper to say, as a matter of law, that for the use in raising loads of one and a half tons in weight, with a winch which could not possibly raise more than three tons, the stevedores were negligent in selecting a cable of such a breaking strain, instead of rigging a heavy chain span.

The steamship King Gruffydd, on which this accident took place, was libeled by one of the other employés of the stevedore, who was injured, and the District Court of the United States rendered a decree in favor of the libelant. On appeal to the United States Circuit Court of Appeals for the Second Circuit the decree was affirmed; and, in the opinion in The King Gruffydd (C. C. A.) 131 Fed.

189, the court, per Lacombe, J., reached the same conclusions we entertain on some of the questions discussed.

The damages awarded by the jury we do not believe to be excessive, nor is the appeal from the order resettling the case meritorious. The judgments and orders refusing new trials should be affirmed, and the appeal from the order resettling the case should be dismissed.

Judgments and orders affirmed, with costs. All concur.