[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 399 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 401 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 403 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 404 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 405 
This is an action brought to recover damages from the defendant for negligently putting up, labeling and selling as and for the extract of dandelion, which is a simple and harmless medicine, a jar of the extract of belladonna, which is a deadly poison; by means of which the plaintiff Mary Ann Thomas, to whom, being sick, a dose of dandelion was prescribed by a physician, and a portion of the contents of the jar, was administered as and for the extract of dandelion, was greatly injured, c.
The facts proved were briefly these: Mrs. Thomas being in ill health, her physician prescribed for her a dose of dandelion. Her husband purchased what was believed to be the medicine prescribed, at the store of Dr. Foord, a physician and druggist in Cazenovia, Madison county, where the plaintiffs reside.
A small quantity of the medicine thus purchased was administered to Mrs. Thomas, on whom it produced very alarming effects; such as coldness of the surface and extremities, feebleness of circulation, spasms of the muscles, giddiness of the head, dilation of the pupils of the eyes, and derangement of mind. She recovered however, after some time, from its effects, although for a short time her life was thought to be in great danger. The medicine administered was belladonna, and notdandelion. The jar from which it was taken was labeled "½ lb.dandelion, prepared "by A. Gilbert, No. 108, John-street,N Y Jar 8 oz." It was sold for and believed by Dr. Foord to be the extract of dandelion as labeled. Dr. Foord purchased the article as the extract of dandelion from Jas. S. Aspinwall, a druggist at New-York. Aspinwall bought it of the defendant as extract of dandelion, believing it to be such. The defendant was engaged at No. 108 John-street, New-York, in the manufacture and sale of certain vegetable extracts for medicinal purposes, and in the *Page 406 
purchase and sale of others. The extracts manufactured by him were put up in jars for sale, and those which he purchased were put up by him in like manner. The jars containing extracts manufactured by himself and those containing extracts purchased by him from others, were labeled alike. Both were labeled like the jar in question, as "prepared by A. Gilbert." Gilbert was a person employed by the defendant at a salary, as an assistant in his business. The jars were labeled in Gilbert's name because he had been previously engaged in the same business on his own account at No. 108 John-street, and probably because Gilbert's labels rendered the articles more salable. The extract contained in the jar sold to Aspinwall, and by him to Foord, was not manufactured by the defendant, but was purchased by him from another manufacturer or dealer. The extract of dandelion and the extract of belladonna resemble each other in color, consistence, smell and taste; but may on careful examination be distinguished the one from the other by those who are well acquainted with these articles. Gilbert's labels were paid for by Winchester and used in his business with his knowledge and assent.
The defendants' counsel moved for a nonsuit on the following grounds:
1. That the action could not be sustained, as the defendant was the remote vendor of the article in question: and there was no connection, transaction or privity between him and the plaintiffs, or either of them.
2. That this action sought to charge the defendant with the consequences of the negligence of Aspinwall and Foord.
3. That the plaintiffs were liable to, and chargeable with the negligence of Aspinwall and Ford, and therefore could not maintain this action.
4. That according to the testimony Foord was chargeable with negligence, and that the plaintiffs therefore could not sustain this suit against the defendant: if they could sustain a suit at all it would be against Foord only.
5. That this suit being brought for the benefit of the wife, *Page 407 
and alleging her as the meritorious cause of action, cannot be sustained.
6. That there was not sufficient evidence of negligence in the defendant to go to the jury.
The judge overruled the motion for a nonsuit, and the defendant's counsel excepted.
The judge among other things charged the jury, that if they should find from the evidence that either Aspinwall or Foord was guilty of negligence in vending as and for dandelion, the extract taken by Mrs. Thomas, or that the plaintiff Thomas, or those who administered it to Mrs. Thomas, were chargeable with negligence in administering it, the plaintiffs were not entitled to recover; but if they were free from negligence, and if the defendant Winchester was guilty of negligence in putting up and vending the extracts in question, the plaintiffs were entitled to recover, provided the extract administered to Mrs. Thomas was the same which was put up by the defendant and sold by him to Aspinwall and by Aspinwall to Foord. That if they should find the defendant liable, the plaintiffs in this action were entitled to recover damages only for the personal injury and suffering of the wife, and not for loss of service, medical treatment or expense to the husband, and that the recovery should be confined to the actual damages suffered by the wife.
The action was properly brought in the name of the husband and wife for the personal injury and suffering of the wife; and the case was left to the jury with the proper directions on that point. (1 Chitty on Pleadings, 62, ed. of 1828.)
The case depends on the first point taken by the defendant on his motion for a nonsuit; and the question is, whether the defendant, being a remote vendor of the medicine, and there being no privity or connection between him and the plaintiffs, the action can be maintained.
If, in labeling a poisonous drug with the name of a harmless medicine, for public market, no duty was violated by the defendant, excepting that which he owed to Aspinwall, his immediate vendee, in virtue of his contract of sale, this action cannot *Page 408 
be maintained. If A. build a wagon and sell it to B., who sells it to C., and C. hires it to D., who in consequence of the gross negligence of A. in building the wagon is overturned and injured, D. cannot recover damages against A., the builder. A.'s obligation to build the wagon faithfully, arises solely out of his contract with B. The public have nothing to do with it. Misfortune to third persons, not parties to the contract, would not be a natural and necessary consequence of the builder's negligence; and such negligence is not an act imminently dangerous to human life.
So, for the same reason, if a horse be defectively shod by a smith, and a person hiring the horse from the owner is thrown and injured in consequence of the smith's negligence in shoeing; the smith is not liable for the injury. The smith's duty in such case grows exclusively out of his contract with the owner of the horse; it was a duty which the smith owed to him alone, and to no one else. And although the injury to the rider may have happened in consequence of the negligence of the smith, the latter was not bound, either by his contract or by any considerations of public policy or safety, to respond for his breach of duty to any one except the person he contracted with.
This was the ground on which the case of Winterbottom v.Wright, (10 Mees. Welsb. 109,) was decided. A. contracted with the postmaster general to provide a coach to convey the mail bags along a certain line of road, and B. and others, also contracted to horse the coach along the same line. B. and his co-contractors hired C., who was the plaintiff, to drive the coach. The coach, in consequence of some latent defect, broke down; the plaintiff was thrown from his seat and lamed. It was held that C. could not maintain an action against A. for the injury thus sustained. The reason of the decision is best stated by Baron Rolfe. A.'s duty to keep the coach in good condition, was a duty to the postmaster general, with whom he made his contract, and not a duty to the driver employed by the owners of the horses.
But the case in hand stands on a different ground. The defendant *Page 409 
was a dealer in poisonous drugs. Gilbert was his agent in preparing them for market. The death or great bodily harm of some person was the natural and almost inevitable consequence of the sale of belladonna by means of the false label.
Gilbert, the defendant's agent, would have been punishable for manslaughter if Mrs. Thomas had died in consequence of taking the falsely labeled medicine. Every man who, by his culpable negligence, causes the death of another, although without intent to kill, is guilty of manslaughter. (2 R.S. 662, § 19.) A chemist who negligently sells laudanum in a phial labeled as paregoric, and thereby causes the death of a person to whom it is administered, is guilty of manslaughter. (Tessymond's case, 1Lewin's Crown Cases, 169.) "So highly does the law value "human life, that it admits of no justification wherever life has "been lost and the carelessness or negligence of one person has "contributed to the death of another. (Regina v. Swindall, 2Car. Kir. 232-3.) And this rule applies not only where the death of one is occasioned by the negligent act of another, but where it is caused by the negligent omission of a duty of that other. (2 Car. Kir. 368, 371.) Although the defendant Winchester may not be answerable criminally for the negligence of his agent, there can be no doubt of his liability in a civil action, in which the act of the agent is to be regarded as the act of the principal.
In respect to the wrongful and criminal character of the negligence complained of, this case differs widely from those put by the defendant's counsel. No such imminent danger existed in those cases. In the present case the sale of the poisonous article was made to a dealer in drugs, and not to a consumer. The injury therefore was not likely to fall on him, or on his vendee who was also a dealer; but much more likely to be visited on a remote purchaser, as actually happened. The defendant's negligence put human life in imminent danger. Can it be said that there was no duty on the part of the defendant, to avoid the creation of that danger by the exercise of greater caution? or that the exercise of that caution was a duty only to his immediate *Page 410 
vendee, whose life was not endangered? The defendant's duty arose out of the nature of his business and the danger to others incident to its mismanagement. Nothing but mischief like that which actually happened could have been expected from sending the poison falsely labeled into the market; and the defendant is justly responsible for the probable consequences of the act. The duty of exercising caution in this respect did not arise out of the defendant's contract of sale to Aspinwall. The wrong done by the defendant was in putting the poison, mislabeled, into the hands of Aspinwall as an article of merchandise to be sold and afterwards used as the extract of dandelion, by some person then unknown. The owner of a horse and cart who leaves them unattended in the street is liable for any damage which may result from his negligence. (Lynch v. Nurdin, 1 Ad. Ellis, N.S. 29;Illidge v. Goodwin, 5 Car. Payne, 190.) The owner of a loaded gun who puts it into the hands of a child by whose indiscretion it is discharged, is liable for the damage occasioned by the discharge. (5 Maule Sel. 198.) The defendant's contract of sale to Aspinwall does not excuse the wrong done to the plaintiffs. It was a part of the means by which the wrong was effected. The plaintiffs' injury and their remedy would have stood on the same principle, if the defendant had given the belladonna to Dr. Foord without price, or if he had put it in his shop without his knowledge, under circumstances which would probably have led to its sale on the faith of the label.
In Longmeid v. Holliday, (6 Law and Eq. Rep. 562,) the distinction is recognized between an act of negligence imminently dangerous to the lives of others, and one that is not so. In the former case, the party guilty of the negligence is liable to the party injured, whether there be a contract between them or not; in the latter, the negligent party is liable only to the party with whom he contracted, and on the ground that negligence is a breach of the contract.
The defendant, on the trial, insisted that Aspinwall and Foord were guilty of negligence in selling the article in question *Page 411 
for what it was represented to be in the label; and that the suit, if it could be sustained at all, should have been brought against Foord. The judge charged the jury that if they, or either of them, were guilty of negligence in selling the belladonna for dandelion, the verdict must be for the defendant; and left the question of their negligence to the jury, who found on that point for the plaintiff. If the case really depended on the point thus raised, the question was properly left to the jury. But I think it did not. The defendant, by affixing the label to the jar, represented its contents to be dandelion; and to have been "prepared" by his agent Gilbert. The word `prepared' on the label, must be understood to mean that the article was manufactured by him, or that it had passed through some process under his hands, which would give him personal knowledge of its true name and quality. Whether Foord was justified in selling the article upon the faith of the defendant's label, would have been an open question in an action by the plaintiffs against him, and I wish to be understood as giving no opinion on that point. But it seems to me to be clear that the defendant cannot, in this case, set up as a defense, that Foord sold the contents of the jar as and for what the defendant represented it to be. The label conveyed the idea distinctly to Foord that the contents of the jar was the extract of dandelion; and that the defendant knew it to be such. So far as the defendant is concerned, Foord was under no obligation to test the truth of the representation. The charge of the judge in submitting to the jury the question in relation to the negligence of Foord and Aspinwall, cannot be complained of by the defendant.
GARDINER, J. concurred in affirming the judgment, on the ground that selling the belladonna without a label indicating that it was a poison, was declared a misdemeanor by statute; (2 R.S. 694, § 23;) but expressed no opinion upon the question whether, independent of the statute, the defendant would have been liable to these plaintiffs. *Page 412 
GRIDLEY, J. was not present when the cause was decided. All the other members of the court concurred in the opinion delivered by Ch. J. RUGGLES.
Judgment affirmed.