HENRY NEWCOMB, RESPONDENT, *v.* OSCAR E. VAN ZILE AND TOM S. WOTKYNS, APPELLANTS.

*Negligence — accidental stoppage of a wagon on a side hill — duty of the owner as to protecting other persons using the street from injury.*

While a wagon loaded with coal and weighing about 5,200 pounds was being driven by two of the defendants' employees up a city street, having a grade of about 10 feet to the 100, one of the horses cast a shoe. The driver thereupon drew up to the right-hand side of the road and his co-employee blocked the wagon by placing, as he testified, a block of wood three or four inches long under one hind wheel and a large lump of coal under each of the others. The driver then took the team to the nearest blacksmith's shop, being absent some fifteen minutes. While the wagon was so standing in the street the plaintiff drove up the hill, but stopped behind and below the wagon in order to allow a heavy wagon which was coming down the hill with one hind wheel chained to pass the coal wagon. As the wagon coming down the hill was passing the coal wagon it slipped, owing to the icy condition of the street, against the coal wagon, causing the latter to slide down the hill and collide with the plaintiff's team and coach and thereby to cause the injuries, to recover damages for which this action was brought.

*Held,* that as the defendants were compelled to stop the wagon upon the street, by an accident and not by any neglect or default of their own, they were only required to block the wagon so that it should be reasonably secure, and that as the evidence showed that this had been done a verdict in favor of the plaintiff should be set aside.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Seymour Van Santvoord,* for the appellants.

*James F. Getty* and *Henry A. King,* for the respondent.

LEARNED, P. J.:

The defendants are coal dealers. On the morning of the accident, February 19, 1883, they sent out a wagon, loaded with coal; the coal and wagon weighing about 5,200 pounds. On going up Ferry street, in Troy, at a point where the street has a grade of about 10 feet to the 100, one of the two horses cast a shoe. The driver thereupon went a few feet, until he drew up to the south side of the street—the right hand side as he was driving. His co-employee there blocked the wagon, and the driver took the team to the nearest blacksmith's shop, being absent some fifteen minutes. His companion remained with the wagon, as he testifies, although the plaintiff and others say they did not see him.

The hill at the time was very icy. The plaintiff, with his coach and team, was driving up the hill. He saw the coal wagon standing and saw another wagon coming down, which, when he saw it, was higher up than the coal wagon. It belonged to the Malleable Iron Works. The plaintiff saw that he could not pass the coal wagon before the other team got down, and therefore stopped on the south side of the street, about two feet from the gutter and about forty feet from the coal wagon. When he first noticed the Malleable Iron Works' wagon it was about 100 feet above the coal wagon. It was very heavy and had one wheel chained. As the Malleable Iron Works' wagon was passing the coal wagon, it slid sideways and struck it. And this collision was undoubtedly owing to the icy condition of the hill, which caused the former wagon to slide against the latter. For there was room enough between

defendant's wagon and the north gutter for the other wagon to pass. This collision (assuming that there was a collision) caused the defendants' wagon to come down the hill. It came rapidly, and struck and injured the plaintiff's coach and horses. For the injury thus sustained the plaintiff sues. The jury rendered a verdict in his favor, and the defendants appeal.

We must notice, in the outset, that the defendants were overtaken by an accident. It was not their wish to stop their wagon in the street. One horse had lost a shoe. To attempt to go farther up the hill, especially in its icy state, when one of the team had lost a shoe, would probably have been great negligence. It was necessary to stop. And the learned judge very properly held that the ordinance of the city did not apply to a case like this. What, then, was defendant's duty? Clearly, to draw the wagon as far as could reasonably be done to the side of the street, and to secure it there, so that it should not roll down the hill. And the learned judge charged that they were not liable, if they had taken such precautions in securing and blocking their wagon as a reasonable man would have done, under the circumstances.

We have been cited to several cases by the plaintiff's counsel. One is *Powell* v. *Deveney* (3 Cush., 300). In that case the defendant's servant left, for the night, a truck standing in the street. The driver of another truck struck the defendant's truck and thus threw the shafts, which had been supported on a plank, against the plaintiff and injured her. She was allowed to recover. In *Lane* v. *Atlantic Works* (111 Mass., 136) the defendants left, between six and seven in the evening, a truck, with a bar of iron on it, standing in the street. A boy meddled with it and the iron fell on the plaintiff. He was allowed to recover. In *Clark* v. *Chambers* (L. R., 3 Q. B. Div., 327) the defendant had unlawfully placed a dangerous instrument in the carriage-road. Another person removed it to the foot-path and the plaintiff was injured. He recovered. In the opinion in that case many authorities are cited which we need not discuss in detail.

Now in each of these cases the act of the defendants was a matter of choice, not of necessity. The act itself was unlawful or illegal. In the first and second cases the defendant had no right to leave the truck, for the night, in the street. In the second case no reason or

excuse is shown why the truck was left standing, and the hour named indicates that it was left for the night. In the English case the defendant's act in setting up the spiked barrier was unjustifiable, and the same will be found to be true of the cases cited in the opinion therein.

But the present case is different. It was by an unforeseen accident that the defendants were obliged to stop and to leave their wagon in the street. The act of leaving the wagon was not negligent, because it was unavoidable. If the loss of the shoe had happened on level ground there would have been no occasion to block the wheels. But as it happened on a hill it was the defendants' duty to take reasonable precaution that the wagon should not roll down the hill.

Many other cases are cited by the plaintiff showing that one is liable for the probable consequences of his wrongful act, such as *Thomas* v. *Winchester* (6 N. Y., 397); *Myers* v. *Malcolm* (6 Hill, 292). But we fail to see that, so far as the mere leaving of the wagon was concerned, the act was wrongful. The question whether there was negligence in guarding it from rolling down hill is a different question.

All that the defendants could be required to do was to block the wagon so that it should be reasonably secure. Probably no blocking would resist every possible force which might be brought against the wagon. Now the plaintiff testifies that the wagon had one little block, six inches long or so, on the nigh hind wheel. Costello, one of the defendants' employes, testifies that he put a block of wood three or four inches thick to one hind wheel, and three large lumps of coal to the other wheels. Sullivan, the driver, also testifies to the blocking.

There is no evidence that the defendants' wagon moved before it was struck by the other wagon. The plaintiff did not see it struck. But both Costello and Hunt testify that the Malleable Iron Company wagon swung sideways across the street and struck and started the defendants' wagon, and that defendants' wagon did not move until it was struck.

Thus we have undisputed proof that defendants' wagon was blocked, and that it was so blocked that it did not move until it was struck. And it is evident that there was no reason why the

defendants' servants should have anticipated such a blow as would be given by a heavily loaded wagon sliding down hill and across the street. Now on the charge of the learned judge, that if the wagon would not have moved from the position in which it was first placed but for the intervention of other circumstances over which defendants had no control and for which they were not responsible, the verdict must be for the defendants, and upon the evidence above stated it seems to us that the verdict cannot stand. There was no evidence that the wagon would have moved but for the blow received from the other wagon. And the jury must have disregarded the charge of the learned judge.

Exception is taken to a part of the charge which may have misled the jury, although it was qualified by other parts. We refer to the charge as to the stop-bar. It does not seem to us that any inference was to be drawn from the absence of a stop-bar. That appliance is intended to prevent a wagon from going back, at any time when a team stops in going up a hill. It is not provided to be used in such an emergency as happened in this instance. Its advantage is that it comes into instant use without obliging the driver to get off and block the wheels. But blocking the wheels is an effectual way of stopping a wagon, and was effectual in this case. We think the jury may have inferred that there was some negligence on defendants' part in not using a stop-bar. And that would have been an incorrect inference.

This, then, is not a case where a defendant has wrongfully and of choice left something in a public place, by means of which a plaintiff is injured. It is a case where an unforeseen accident compelled the defendants to leave their wagon on the street for a time. Their duty was to make it reasonably secure. There is no evidence that they did not. It was secured against any of the ordinary causes which might be anticipated to affect it. It did not move until an extraordinary cause impelled it, a cause which probably no ordinary blocking would have withstood.

The judgment and order are reversed and new trial granted, costs to abide event.

Present — LEARNED, P. J., BOCKES and LANDON, JJ.

Judgment and order reversed, new trial granted, costs to abide event.