REINHARD KUELLING, Respondent, *v.* THE RODERICK LEAN MANU-FACTURING COMPANY, Appellant.

*Manufacturer of a defective machine — his liability to one who purchases it from a dealer and is injured.*

A manufacturer of farm implements, who, in the construction of a land roller, uses a stick of timber materially weakened by a knot hole, fills up such knot hole with a piece of wood, and then, by the use of paint and putty, conceals the defect in such a manner as to make discovery practically impossible, is not liable, in an action for negligence, for injuries sustained in consequence of the latent defect by a person who purchases the farm roller of a dealer to whom the manufacturer has sold it.

WILLIAMS, J., dissented.

APPEAL by the defendant, The Roderick Lean Manufacturing Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 14th day of May, 1903, upon the verdict of a jury for $3,040, and also from an order entered in said clerk's office on the 14th day of May, 1903, denying the defendant's motion for a new trial made upon the minutes.

The action was commenced on the 19th day of March, 1903, to recover damages for bodily injuries sustained by the plaintiff on the 3d day of September, 1902, by being run over by a land roller manufactured by the defendant, which injuries are alleged to have been caused solely through the defendant's negligence.

*S. D. Bentley*, for the appellant.

*Charles Van Voorhis*, for the respondent.

McLENNAN, P. J.:

The defendant, a foreign corporation, organized under the laws of the State of Ohio, was engaged in the manufacture and sale of "land rollers" and other farm implements at Mansfield in that State. About the 5th day of September, 1901, the defendant, in the regular course of trade, sold eleven land rollers manufactured by it to Weaver, Palmer & Richmond, who, as copartners, were engaged in the business of buying and selling farm implements and machinery at the city of Rochester, N. Y. In April, 1902, Fuller & Barnhart, of Fairport, N. Y., who were engaged in the same business, purchased one of the eleven rollers from Weaver, Palmer & Richmond, and about the same time sold it to the plaintiff, who was engaged in carrying on a farm at East Penfield, N. Y., in Monroe county, and at the same time delivered to him a booklet or catalogue issued by the defendant for distribution to purchasers, or prospective purchasers, of its implements, which contained a description and set forth the alleged good qualities of the same. It also contained a statement to the effect that the land rollers manufactured by it were tested before being put on the market, and were a success in every way. Immediately upon purchasing the roller the plaintiff took it to his farm, rolled about twenty acres of land with it that spring, and then stored it, under cover, for the summer. On the third day of September following he again commenced to use the roller; was sitting on the seat and driving in the ordinary way when, after he had rolled a few acres, the tongue broke between the whiffletree and neck yoke, and he was thrown to the ground in front, was dragged a short distance, the roller finally passing over his body, and he sustained the injuries for which he seeks to recover in this action.

The evidence tends to show that black oak, the kind of wood of which the tongue was made, was unsuitable for that purpose; that it was cross-grained, and at the point where it broke was further materially weakened by a knothole, which had been plugged with a piece of wood held in place by a nail. All had been made smooth by the use of putty and then painted over the same as the rest of the roller, in such manner as to make the discovery of any defect practically impossible.

The evidence very conclusively established that the tongue of the

roller broke because of the defects referred to, and justifies the conclusion that it broke by reason of the knothole; that the defendant knew of the defects, and knew, or ought to have known, that when the roller was used in the ordinary way the tongue would be liable to break on account of such defects; that, notwithstanding such knowledge, it intentionally concealed the defects, and in such manner as to render their discovery by the plaintiff or his vendor practically impossible. The evidence also tended to prove that at the time of the accident the plaintiff was operating the roller in the ordinary way, in a careful and prudent manner, and was not guilty of contributory negligence.

The case was submitted to the jury purely and simply as an action for negligence. While in the complaint it was alleged that the defendant " wilfully, maliciously, negligently and fraudulently " put the defective tongue into the roller in question, intending that such implement should be sold in the open market, and concealed such defect knowing that when used it would break and probably occasion injury to the person using it, that question was not left to the jury for determination. The learned trial court charged the jury, in substance, that no contractual relation or privity existed between the plaintiff and the defendant; that the " basis of the action is negligence," and that in order to recover the plaintiff was only required to establish, by a fair preponderance of evidence, that the accident was caused through the negligence of the defendant, and without negligence on the part of the plaintiff.

The court also charged that in order to establish defendant's negligence and entitle the plaintiff to recover it was necessary for the jury to be satisfied, upon the evidence, that the land roller in question, with the defective tongue, was a machine or implement imminently dangerous to human life, but charged, as matter of law, that a " land roller" was not intrinsically thus dangerous, but was an implement in ordinary and every-day use and of simple construction. The jury determined each of the questions submitted favorably to the plaintiff.

The portion of the charge of the learned trial court last adverted to raises the only important question presented by this appeal, viz.: Is a manufacturer liable, in an action for negligence, for injuries sustained by a third party, between whom and himself there is no

privity of contract, resulting from a defect in an article, implement or machine manufactured by him for sale in the open market, which is not intrinsically dangerous to human life, but becomes so because of such defect which is concealed in such manner as to practically prevent its discovery ?

It would hardly be useful for this court to enter upon an extended discussion of what, upon principle, the law ought to be in such a case, especially in view of the exhaustive consideration given to the subject by the Court of Appeals, extending over a period of half a century. We should, rather, confine ourselves to ascertaining, if possible, what the law, applicable to the facts of this case, is, as laid down by the highest court of the State.

Much might be said in favor of the proposition that it would be wise, useful and equitable to hold that a manufacturer of any implement — whether chair, crowbar, stepladder, carriage, "land roller," engine or steamship — who negligently and knowingly constructs the same with a latent defect concealed so that discovery is impracticable, and sells it to be used in the ordinary way, should be held liable to any person who, without negligence on his part, is injured because of such defects, even although there is no privity between the manufacturer and the party injured. Such rule would tend to prevent the making and sale of shoddy goods; would go far toward compelling manufacturers to make their products in fact what they seem and appear to be; would serve as a warning to a manufacturer that a cross-grained, unsound or defective neckyoke, whiffletree, wheel spoke, hub, or any other part of an implement, if defective, no matter how intrinsically simple in construction, cannot be manufactured and sold by him, if such defects were known and concealed, without incurring the risk of being held liable for all damages resulting therefrom, no matter by whom sustained. Such doctrine is certainly broad and far-reaching, and revolutionizes the generally accepted notion of the scope of an action for negligence. An affirmance of the judgment appealed from involves assent to this proposition in its broadest sense. A land roller does not differ in any material essential from any of the other implements mentioned. Neither, in and of itself, is imminently dangerous to human life; either may become so because of a hidden defect, as may almost any manufactured article however simple.

In the discussion of the question involved by the Court of Appeals, the case of *Winterbottom* v. *Wright* (10 Mees. & Wels. 109) is uniformly cited with approval. In that case A. contracted with the Postmaster-General to provide a mail coach for the purpose of conveying the mail bags from Hartford, in the county of Chester, to Holyhead, and agreed to keep such coach "in a fit, proper, safe and secure state and condition for the said purpose." B. contracted with the Postmaster-General to horse said coach and draw it over said route. C., an employee of B., while driving the coach, was thrown from it, by reason of certain latent defects therein, and was seriously injured. It was held that an action brought by C. to recover from the manufacturer of the coach the damages for the injuries sustained would not lie. The reason for the decision was stated by Baron ROLFE: A's duty to keep the coach in good condition was a duty which he owed to the postmaster-general, with whom he made his contract, and not a duty to the driver employed by the owner of the horses.

He further said : "This is one of those unfortunate cases in which there certainly has been *damnum*, but it is *damnum absque injuria*. It is, no doubt, a hardship upon the plaintiff to be without a remedy, but by that consideration we ought not to be influenced. Hard cases, it has been frequently observed, are apt to introduce bad law."

*Thomas* v. *Winchester* (6 N. Y. 397) was an action brought to recover damages from the defendant because he negligently put up, labeled and sold as and for the extract of dandelion, which is a simple and harmless medicine, a jar of the extract of belladonna, which is a deadly poison. The plaintiff being sick, a dose of dandelion was prescribed by a physician, but, because of the false label, a portion of the contents of the jar of belladonna was administered as and for the extract of dandelion, and the plaintiff thereby sustained injury. It appeared that the defendant, who put up the belladonna, sold it to a druggist in New York; that by him it was sold to a druggist in Cazenovia, and by him sold to the plaintiff, yet it was held that the defendant, who originally put up and improperly labeled the poison, was liable for the injuries sustained by the plaintiff. The decision was placed upon the ground that "the death or great bodily harm of some person was the natural and almost inevitable consequence of the sale of belladonna by means of the false

label;" but RUGGLES, Ch. J., writing the opinion for the court, expressly approved the decision in the *Winterbottom Case* (*supra*), and further illustrated the principle of that case by saying: "If A. build a wagon and sell it to B., who sells it to C., and C. hires it to D., who in consequence of the gross negligence of A. in building the wagon is overturned and injured, D. cannot recover damages against A., the builder. A.'s obligation to build the wagon faithfully arises solely out of his contract with B. The public have nothing to do with it. Misfortune to third persons, not parties to the contract, would not be a natural and necessary consequence of the builder's negligence, and such negligence is not an act imminently dangerous to human life."

The question was next considered in *Loop v. Litchfield* (42 N. Y. 351). The head note is: "The vendor of an article of his own manufacture is not liable to one who uses the same, with the consent of the purchaser, for injuries resulting from a defect therein, unless such article is, in its nature, imminently dangerous."

The facts in that case were: The defendant Litchfield, a manufacturer of machinery, sold a defective fly wheel to be used upon a wood saw. The defect, which was one existing in the casting, was plugged with an iron bolt, lead run about it and then all painted over so as to prevent discovery. The defendant's vendee loaned the fly wheel to the plaintiff, and while using it in the ordinary way and without negligence the wheel burst and the plaintiff was injured. It was held that the plaintiff could not recover against the manufacturer, because the fly wheel was not an article which in and of itself was imminently dangerous to human life. The court in that case, HUNT, J., writing the opinion, approved of the illustration in reference to the wagon in the *Winchester Case* (*supra*), and further said: "So, if a horse, defectively shod, is hired to another, and by reason of the negligent shoeing the horse stumbles, the rider is thrown and injured, no action lies against the smith. In these and numerous other cases put in the books, the answer to the action is that there is no contract with the party injured, and no duty arising to him by the party guilty of negligence."

The decision in the *Winchester Case* (*supra*) was approved because the poison, the subject in that case, was dangerous. The court said: "Poison is a dangerous subject. Gunpowder is the same. A tor-

pedo is a dangerous instrument, as is a spring gun, a loaded rifle or the like. They are instruments and articles in their nature calculated to do injury to mankind, and generally intended to accomplish that purpose. They are essentially, and in their elements, instruments of danger. Not so, however, an iron wheel, a few feet in diameter and a few inches in thickness, although one part may be weaker than another. If the article is abused by too long use, or by applying too much weight or speed, an injury may occur, as it may from an ordinary carriage wheel, a wagon axle, or the common chair in which we sit. There is scarcely an object in art or nature from which an injury may not occur under such circumstances. Yet they are not in their nature sources of danger, nor can they, with any regard to the accurate use of language, be called dangerous instruments. That an injury actually occurred by the breaking of a carriage axle, the failure of the carriage body, the falling to pieces of a chair or sofa, or the bursting of a fly wheel, does not in the least alter its character."

So far, then, we have the *Winterbottom Case* (*supra*), which holds that the defendant in that case was not liable because he manufactured and sold a mail coach in which there was a latent defect, by reason of which the person driving the same was injured; the *Winchester Case* (*supra*), which approves the decision in the *Winterbottom* case, and states by way of illustration that a person who manufactures a wagon with a latent defect which is concealed is not liable to third parties for injuries sustained by reason of such defect; then *Loop* v. *Litchfield* (*supra*), which holds that the manufacturer of a defective fly wheel, which was known to be defective and was put in such condition that the defect could not be discovered, was not liable to a third party for injuries resulting from such defect.

In the case of *Losee* v. *Clute* (51 N. Y. 494) the head note is as follows: "The manufacturer and vendor of a steam boiler is only liable to the purchaser for defective materials, or for any want of care and skill in its construction, and if, after delivery to and acceptance by the purchaser and while in use by him, an explosion occurs in consequence of such defective construction, to the injury of a third person, the latter has no cause of action because of such injury against the manufacturer."

In the opinion delivered in the case last referred to the cases of *Thomas* v. *Winchester* and *Loop* v. *Litchfield* (*supra*) are cited with approval.

In *Coughtry* v. *Globe Woolen Co.* (56 N. Y. 124) O. and M. contracted with the defendant to put a cornice on its mill, and to erect any scaffolding required for that purpose. Plaintiff's intestate was employed by O. and M. to work upon such scaffold, and because of a defect therein the scaffold fell and he was injured. It was held that he was entitled to recover because of the fact that the scaffold was erected on defendant's premises and for the purpose of accommodating the workmen upon it, and that the defendant was chargeable with the duty of seeing to it that such scaffold was reasonably safe, independent of the contract which it had made with O. and M.; but Judge RAPALLO, writing for the court, cites with approval the *Winterbottom Case* (*supra*), denominating it as the leading case; and the cases of *Loop* v. *Litchfield* and *Losee* v. *Clute* (*supra*) are also cited with approval. Referring to those cases the court said: "The defective article had been sold and delivered to the purchaser; the seller or maker had ceased to have any control over it; and, in the absence of fraud on his part, responsibility to third persons for what was subsequently done with the article devolved upon those having charge of it. A tradesman who sells an article which he at the time believes and warrants to be sound, but which is actually unsound, is not liable for an injury subsequently sustained by a third person not a party to the contract of sale in consequence of such unsoundness. (*Longmeid* v. *Holliday,* 6 Eng. L. and E. 562.)"

In *Coughtry* v. *Globe Woolen Co.* (*supra*) the plaintiff was entitled to recover because "the scaffold belonged to the defendant; had been erected by it; was in its possession and was being used on its premises with its permission, for the very purpose for which it had been furnished, and by the persons for whose use it had been provided." And further, because the nature and position of the structure was such "that death or great bodily harm to those persons would be the natural and almost inevitable consequence of negligently constructing it of defective material or insufficient strength."

*Devlin* v. *Smith* (89 N. Y. 470), often cited, was a case in which a painter contracted with a scaffold-builder to erect a scaffold which

would enable him to paint the dome of a building ninety feet high. The builder constructed a scaffold with a concealed defect. An employee of the painter went upon the scaffold and was killed by reason of such latent or undiscoverable defect. In an action brought by his representatives it was held that a recovery could be sustained against the scaffold-builder but not against the painter upon the ground that the scaffold was a structure imminently dangerous to human life. Judge RAPALLO, in writing the opinion for the court, said: " As a general rule, the builder of a structure for another party under a contract with him, or one who sells an article of his own manufacture, is not liable to an action by a third party who uses the same with the consent of the owner or purchaser, for injuries resulting from a defect therein, caused by negligence. The liability of the builder or manufacturer for such defects is, in general, only to the person with whom he contracted. But, notwithstanding this rule, liability to third parties has been held to exist when the defect is such as to render the article in itself imminently dangerous, and serious injury to any person using it is a natural and probable consequence of its use."

The learned jurist cites the cases of *Thomas* v. *Winchester* (*supra*) and *Mayor, etc.,* v. *Cunliff* (2 N. Y. 165) with approval, and adds: " Some of the examples there put by way of illustration were commented upon, and among others the case of one who builds a carriage carelessly and of defective materials, and sells it, and the purchaser lends it to a friend, and the carriage, by reason of its original defect, breaks down and the friend is injured, and the question is put, can he recover against the maker? The comments of RUGGLES, Ch. J., upon this supposititious case in *Thomas* v. *Winchester*, and the ground upon which he answers the question in the negative, show clearly the distinction between the two classes of cases. He says that in the case supposed the obligation of the maker to build faithfully arises only out of his contract with the purchaser. The public have nothing to do with it. Misfortune to third persons, not parties to the contract, would not be a natural and necessary consequence of the builder's negligence, and such negligence is not an act imminently dangerous to human life."

Again we have assent to the proposition that if A. manufactures a carriage (or " land roller ") with a latent defect concealed so as to

render discovery of such defect practically impossible, sells it to B., and B. sells it to C., who in the use of such carriage is injured without negligence on his part, he cannot recover against A. for the injuries sustained by him on account of the breaking of such carriage in consequence of such defects.

The decision in the *Devlin Case* (*supra*) is put upon the broad ground that a scaffold ninety feet high is, in and of itself, imminently dangerous to the lives of those who may go upon it; but the decision clearly points out that such a structure cannot be held to be thus imminently dangerous simply because of the defect which is complained of.

There ought to be no misunderstanding as to the precise question involved. The cases cited all hold that a recovery by a third party may be had where the latent defect relates to an article, implement or product which in and of itself is imminently dangerous to human life; as was said in *Loop* v. *Litchfield* (*supra*), poison, gunpowder, a torpedo, spring gun, loaded rifle, etc., are articles which in their nature are calculated to do injury to mankind; but as we interpret those decisions they do not hold that such rule applies to implements which in and of themselves are absolutely harmless, but which are rendered thus dangerous only by reason of a latent defect.

It is apparent that the distinction in principle between the scaffold cases and the one at bar is not so marked as in the poison case, but still we think the Court of Appeals has uniformly sought to maintain the distinction and to hold that in cases where the article manufactured is in and of itself, independent of the defect, imminently dangerous to human life, a recovery may be had against the contractor or manufacturer by any person injured because of concealed defects in such article, without reference to whether or not privity of contract exists; but that, on the other hand, where the article is not in and of itself imminently dangerous, and where the entire danger results because of some latent defect, the manufacturer is not liable to third persons for injuries sustained by reason of such defect. It is evident that if such is the correct interpretation of the decisions, injustice may at times result. It is also apparent that if the rule contended for by the respondent is to prevail, injustice will frequently result to the manufacturer. In that event an action would not be brought by an employee, injured by defective machinery,

against his employer, which involves the proposition of proving that such employer knowingly furnished him a defective machine, and that the employee did not assume the risk incident to the operation thereof; but would be brought directly against the manufacturer of the machine, and the whole case would be made out by simply proving that the machine which caused the injury complained of was defective as originally constructed, and that such defect was concealed.

The decisions in *Wright* v. *D. & H. Canal Co.* (40 Hun, 343); *Swan* v. *Jackson* (55 id. 194), and *Favo* v. *Remington Arms Co.* (67 App. Div. 414) would also seem to be authority for the proposition that the plaintiff, upon the proof in this action, is not entitled to recover.

The rule contended for by the respondent, and which would sustain a recovery, is supported by the decisions of many of the courts of sister States; notably *Schubert* v. *J. R. Clark Co.* (49 Minn. 335); *Derry* v. *Flitner* (118 Mass. 131); *Lewis* v. *Terry* (111 Cal. 39).

We refrain from expressing an opinion as to the soundness of the argument which led to the conclusion reached in those cases, and content ourselves with the suggestion that, as we understand it, the courts of this State have not adopted the rule there enunciated; but, on the contrary, have uniformly held that in an action like the one at bar recovery could not be had. An affirmance of the judgment appealed from would involve assent to a proposition so radical, as applied to actions for negligence, that we think it should first be distinctly announced by the Court of Appeals, rather than by an intermediate appellate court.

These considerations lead us to conclude that the judgment and order appealed from should be reversed.

All concurred, except WILLIAMS, J., dissenting.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.