## REPRESENTATIONS AS TO A NERVE SPECIFIC.

Circuit Court of Cuyahoga County.

E. H. HECHLER v. THE MAKE-MAN TABLET CO.

Decided, January 20, 1908.

*Implied Warranty in Sale of Tablets to Druggist.*

In a sale by the manufacturer to a driggist of tablets represented to be valuable as a specific for nerve troubles and a first-class nerve tonic, there can be no issue made as to whether the tablets were in fact a specific for nerve troubles, but there is an implied warranty that they are not worthless or deleterious to health.

*George A. Grost,* for plaintiff in error.
*Carr, Stearns & Chamberlain,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

These proceedings in error were brought by the plaintiff in error for the reversal of a judgment against him recovered in the common pleas court by the Make-Man Tablet Co., in an action where said company sued on a contract for the sale to Hechler of three gross Make-Man tablets at the rate of $48 per gross, f.o.b. Cleveland. Delivery of the tablets as agreed and performance of all the terms of the contract by the company were alleged and failure of Hechler to pay as he had agreed.

Hechler admitted making the contract and receiving the tablets, and among other defenses alleged that the tablets were represented to him to be valuable as a specific for nerve troubles and a first-class nerve tonic, whereas in truth and in fact they were not, but on the contrary were worthless and deleterious to health. He alleged that he shipped the goods back to the company. This return of the goods was so delayed, as shown by the evidence, that it is doubtful if it worked a rescission of the contract, but is mentioned because of the offer of Hechler to prove that the tablets were worthless.

On the trial, Hechler offered to show that the tablets were worthless and actually deleterious to health, but the trial judge

ruled out all such evidence, holding him to the rule of *caveat emplor*.

In this we think the trial judge erred.

Not only was it competent to show that the goods were worthless, as excusing his failure to tender them back within a reasonable time, but we think that the peculiarities of the druggist's business made this and other evidence offered relevant as establishing a valid defense. ·

In the course of the opinion in the case of *Davis* v. *Guarnieri,* 45 O. S., 470, 492, Judge Owen uses· the following language:

"The public safety and security against the fatal consequences of negligence in keeping, handling and disposing of dangerous drugs, is a consideration to which no dealer can safely close his eyes. An imperative social duty requires of him that he use such precautions as are liable to prevent death or serious injury to those who may, in the ordinary course of events, be exposed· to the dangers incident to the traffic in poisonous drugs."

In the case of *Thomas* v. *Winchester,* 6 N. Y., 397 (57 Am. Dec., 455), it was held:

"A manufacturing druggist selling poisonous drugs labeled as harmless, by himself or his agent, is liable ·in damages to a person who, without carelessness on his part, and relying on the erroneous label, takes such drug, as a medicine, on the ground of breach of public duty, and whether the injured person is an immediate customer of the defendant or not."

In the course of the opinion in this case Ruggles, C. J., said:

"The defendant's duty arose out of the nature of his business and the dangers to others incident, to its mismanagement."

In the case of *Willington* v. *Dorner Kerosene Oil Co.,* 104 Mass., 64, it was held that where a manufacturer of oils for illumination, knowing that naptha is explosive and dangerous, sells it to a retailer of illuminating oils, who, in ignorance of its dangerous character, sells it to a customer equally ignorant, who uses it in his lamp, causing an explosion, the manufacturer is liable for the damage resulting therefrom.

The same rule applies to the manufacture of a hair wash by a chemist or druggist. *George* v. *Skivington,* L. R., 5 Ex., 1.

Many similar cases are collected in the note to *Howes* v. *Rose*, 55 Am. St., 251.

In the case of *Jones* v. *George*, 42 Am. Rep., 689, it was held that the business of a druggist is such that in the very nature of things the druggist must be held to warrant that he will deliver the drug called for and purchased by the customer.

The Supreme Court of Michigan carried the doctrine of implied warranty even further, and applied it to so common an article of food as bread, in the case of *Sinclair* v. *Hathaway*, 57 Mich., 60, where it was held:

"A baker impliedly warrants the wholesomeness of bread which he sells at a discount to the peddler who distributes it."

From the cases cited and others like them we draw the conclusion that in the case of the sale of the tablets here involved there can be no issue made as to whether the tablets were in fact a specific for nerve troubles; doctors would doubtless disagree with regard to well known remedies on that point; but we think there was an implied warranty that they were not worthless, bread pills, for instance, or deleterious to health. The offer to prove in this case was that the tablets being heavily coated with plaster of paris, were insoluble and produced inflammation in the alimentary tract and might lead to death. We think the druggist should have been permitted to make this defense, if he could substantiate it.

For error in ruling on evidence the judgment is reversed.