## Henry Grandt, Jr., and Louis Witt, Appellants, v. Chicago, Burlington & Quincy Railroad Company, Appellee.

## Gen. No. 20,914.

1. NEGLIGENCE, § 12*—*duty of carrier to anticipate use to which property shipped may be put.* When a common carrier knows, or in the exercise of ordinary care should know, that a car contains a poisonous substance known as white lead, and knows or should know that the car is intended to be used to carry brewery refuse intended as cattle feed, it is its duty to anticipate that the refuse may be fed to cattle.

2. ACTION, § 32*—*when action of tort will lie.* An action of tort may lie for breach of duty imposed by law independently of contract.

3. NEGLIGENCE, § 20*—*when action of tort will lie against carrier for failure to furnish suitable car to third person.* An action of tort to recover damages arising out of the failure of a carrier to perform its duty to furnish a suitable car to the consignor of brewery refuse, intended to be used as cattle feed, lies in behalf of one purchasing

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

188        APPELLATE COURTS OF ILLINOIS.

Grandt, Jr., et al. v. C., B. & Q. R. Co., 195 Ill. App. 187.

such feed from the consignee against such carrier, independently of contract, when his cattle died due to the fact that the feed became contaminated with white lead which was on the floor of the car.

4. CARRIERS, § 71*—*when carrier not relieved of duty to furnish suitable car.* The fact that the consignor of brewery refuse, intended for cattle feed, agrees with the carrier to clean a car in which the feed is to be shipped does not relieve the carrier from its duty to furnish a suitable car for such purpose, as the consignor is simply the agent of the carrier.

5. NEGLIGENCE, § 79*—*when contributory negligence in not discovering poison in fodder is for jury.* It is a question of fact for the jury whether the purchaser of brewery refuse, intended for cattle feed, was in the exercise of ordinary care in failing to take measures to ascertain the nature of a poisonous whitish substance in a railroad car and in the feed, when three other persons besides such purchaser noticed such substance in the feed and on the bottom of the car and bought it from the consignee for the purpose of feeding it to their cattle, and actually fed it to them.

6. SALES, § 241*—*when rule of caveat emptor inapplicable in action against third person.* The rule of *caveat emptor* does not apply in an action against a carrier, by a purchaser from the consignee for damages for loss of cattle due to the presence of white lead in brewery refuse, intended for cattle feed, as a result of contamination due to an unclean car.

Appeal from the County Court of Cook county; the Hon. ISAAC HUDSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded. Opinion filed October 6, 1915.

**Statement by the Court.** This is an action brought by Henry Grandt, Jr., and Louis Witt, appellants and hereinafter referred to as the plaintiffs, against the Chicago, Burlington & Quincy Railroad Company, appellee and hereinafter referred to as the defendant, to recover damages arising out of a violation of its legal duty imposed upon defendant as a common carrier, to furnish cars suitable for the purpose for which they were to be used, which, in the case at bar, was the transportation of cattle feed. Suit was originally begun against defendant and one James H. Murphy, who will hereinafter be designated as the consignor. Upon the trial below plaintiffs dismissed as to the consignor,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and on motion of the defendant at the close of plaintiffs' case, the court instructed the jury to find defendant not guilty, upon which verdict the court entered judgment against the plaintiffs for costs, to reverse which plaintiffs have prosecuted this appeal.

The amended declaration consisted of five counts which, in substance, charged that on or about the 19th day of September, 1913, defendant owned and operated a railroad in the city of Chicago extending to other places; that Murphy, the consignor, a dealer in dairy feed known as malt grain or brewer's refuse used as cattle feed, ordered a car from the defendant in which to ship such cattle feed to a dealer at Wheeling, Illinois, to be sold by said dealer to farmers as cattle feed; that defendant, well knowing what use the car was intended for, was duty bound to furnish a clean, wholesome car suitable for the purpose for which it was intended, but, notwithstanding such knowledge and duty, defendant carelessly and negligently furnished a car which contained in the bottom and on the sides a poisonous substance known as white lead, by reason of which the feed loaded in said car became contaminated; and that the said Murphy, also a party defendant, carelessly and negligently loaded said feed into the car so furnished by the defendant railroad company; that plaintiffs, who had purchased some of the said feed, while in the exercise of due care, fed the same to their cattle, some of which became sick and died from the effects thereof; and that by reason of the negligence of the defendant aforesaid, plaintiffs sustained damages.

Defendant filed two pleas; one joining the issues, and one denying the possession and use of the railroad as alleged in the amended declaration. Plaintiffs joined issue on these pleas. On this state of the record, it is unnecessary to set forth the pleas filed by Murphy, the consignor.

190    APPELLATE COURTS OF ILLINOIS.

Grandt, Jr., et al. v. C., B. & Q. R. Co., 195 Ill. App. 187.

The evidence offered on behalf of the plaintiff showed that Murphy, the consignor, at the time of the trial (which took place during April, 1914), had been dealing in cattle feed for thirteen years, during which period it had been his custom to ship brewer's refuse, for cattle feed, over defendant's lines; that in September, 1913, he contracted to ship a load of such refuse to one Henry Grandt, Sr., at Wheeling, Illinois, and for that purpose, on or about September 19, 1913, ordered a car from defendant; that on or about the said day, the employees of said consignor hauled the brewer's refuse from the Atlas, National, Garden City and Gambrinus brewing companies to the defendant's team track at Nineteenth street and Western avenue, for the purpose of loading same into the car for shipment to Wheeling; that when they arrived at defendant's yards and asked which car had been placed there for use by the consignor, the yard boss designated a certain car for that purpose; that said employees cleaned said car with shovels and brooms, whereupon said refuse was loaded therein. The evidence further showed that the shipment reached Grandt at Wheeling on or about the 21st of September; that said Grandt sold part of the contents thereof to the plaintiffs; that when the various purchasers of said refuse (including the plaintiffs) loaded same from the car into their wagons they noticed a white or greyish substance at the bottom of the car, being from two to four inches thick, some of which had become mixed with the said brewer's refuse; that plaintiffs, not knowing the nature of this whitish substance, and having no reason to suspect that it was harmful, commenced feeding the refuse, in which it was contained, to their cattle on or about the 23rd of September, and that about the 3rd day of October they observed their cattle had become sick, five of which died a short time thereafter; that in the interim the cattle had no other feed; that this substance appeared white and lumpy; that samples of the feed containing

this whitish substance taken from the car were analyzed by a chemist, who found that said whitish substance contained a mineral substance known as lead carbonate or white lead, which was poisonous, and would produce disease, derangement or death if taken in sufficient quantities; that several veterinary surgeons who had made a post mortem examination were of the opinion that the cattle had died from lead poisoning or some poisoning occasioned by eating white lead; that the said refuse, when obtained from the breweries was in good and wholesome condition, free from any poisonous substances; that the wagons in which it was hauled from the breweries to the car and from the car to plaintiffs' premises at Wheeling were clean and free from harmful and poisonous substances, as was also the malt box in which the refuse was kept by the plaintiffs; that there was no white lead anywhere on the plaintiffs' premises where the cattle were fed or herded. Plaintiffs also showed by the three witnesses who testified that they had observed this whitish substance at the bottom of the car and that it had become mixed with the refuse, that their cattle were also fed this refuse.

HUGO J. THAL, for appellant; RICE, LOWES & O'NEILL, of counsel.

J. A. CONNELL, for appellee; CHESTER M. DAWES, of counsel.

MR. JUSTICE PAM delivered the opinion of the court.

While the record does not show the argument advanced by defendant in the court below in support of its motion for a directed verdict, yet it is fair to presume that there, as here, it relied in the main on the contention that even though the jury could, from the facts in evidence, reasonably have concluded that the defendant furnished the car containing the white lead, and further, that it knew the purpose for which the car

was to be used, yet inasmuch as plaintiffs were not parties to the contract and there was no privity between plaintiffs and the defendant, the former could not be heard to complain of that fact, notwithstanding it was negligent. Plaintiffs, in their contention, do not claim to have been parties to the contract, nor that there was any privity between themselves and the defendant, but insist that as the defendant knew the purpose for which this car was to be used, there was a duty imposed upon it by law, to furnish a car suitable for the said purpose, and that consequently it was liable for its failure to perform such duty, not only to the person with whom it had contracted to furnish said car, but to any person who might be injured because of its failure to perform that duty; that the failure to perform that duty was an original wrongful act which would naturally, in the ordinary course of events, prove injurious to some other person or persons, for which it would be liable if there was no intervention by any independent agency contributing to the injury.

There is no controversy between the parties that the plaintiffs could not maintain this action by reason of any contract of carriage. The question at issue is the right of plaintiffs to recover for the original wrongful act of the defendant, independently of contract. The principle of law that an action of tort may lie for a breach of duty imposed by law independently of any contract is abundantly supported by authority. In Cooley on Torts (2nd ed.), p. 76, it is said:

"If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent."

And again the same author says on page 83:

"There is a maxim that 'fraud is not purged by circuity,' and this is true of any wrongful act."

This principle of law was also well set forth in the case of *Davidson v. Montgomery Ward & Co.,* 171 Ill. App. 355. There, as in the case at bar, plaintiff was not a party to the contract and it was therefore contended that he could not sue. In the course of a well-considered opinon, many authorities are cited, among which is the case of *Cunningham v. C. R. Pease House Furnishing Co.,* 74 N. H. 435, in reference to which Mr. Justice Baldwin, the writer of the opinion, said (p. 370):

"This was an action which was brought by a daughter to whose mother the representations were made. The plaintiff's evidence in the case tended to show that certain manufacturers of a stove blacking advertised it in Nashua, stating that it was for sale by the defendants; the plaintiff's mother saw the advertisement, called at the defendant's store and asked a clerk if the blacking they were advertising was intended for stovepipes or for stoves. He replied that it was intended for stoves, and said, 'The warmer the stove, the better it works.' She replied, 'Won't that be fine; I can black my stove without letting my fire go out.' Relying upon the representations that the blacking could be safely used on a hot stove, the mother bought a can. Two days later, the plaintiff, a member of her mother's family, used some of the blacking on a hot stove and an explosion resulted, causing the injuries complained of. The plaintiff and her mother were blamelessly ignorant of the fact that the blacking contained naphtha. In the opinion the court says: *'The defendant's position is like that of one who "puts destructive * * * materials in situations where they are likely to produce mischief." Ricker v. Freeman,* 50 N. H. 420, 432. *Such a person must respond in damages to those who are injured because of his acts, if he either knew or ought to have known that the materials were dangerous and that the persons injured might come in contact with them. Hobbs v. Company, ante* [74 N. H.] *116; Scott v. Shepherd,* 3 Wils. 403; *S. C. 2 W. Bl.* 892; *Cooley on Torts,* 78. (Italics ours.)

194 · Appellate Courts of Illinois.

Grandt, Jr., et al. v. C., B. & Q. R. Co., 195 Ill. App. 187.

" 'Although the defendants probably did not have the plaintiff in mind when they sold the blacking to her mother, they knew the mother bought it to use on her stove and that other members of the family were likely to use it, consequently the plaintiff can recover, if her mother could have recovered, had she been injured instead of the plaintiff.' * * *''

Another case cited was that of *Thomas v. Winchester*, 6 N. Y. 397, wherein a dealer in drugs sold another druggist a jar of belladonna, labeling it "Extract of Dandelion," from which the second druggist filled a prescription for "Extract of Dandelion." The patient took the medicine containing the belladonna, and an action by him against the first seller of the deadly drug was sustained. Therefore, in the case at bar, if there were facts in evidence from which the jury might say or might reasonably infer that defendant knew, or in the exercise of ordinary care should have known, that the car in question contained a poisonous substance known as white lead, and furthermore, knew, or should have known, the purposes for which said car was to be used, then it was its duty, as a matter of law, to anticipate the consequences that might naturally and properly follow its act in furnishing such a car for the purposes intended, viz., that anyone buying the refuse might feed same to his live stock. If the jury might further infer from the evidence that plaintiffs sustained injury from said act on the part of the defendant, by which they were damaged, and that said injury was a natural and probable consequence of such act, then under the principle of law above cited, defendant would be liable for the said injury. After a careful review of the evidence, we are of the opinion that the jury might reasonably have inferred from said evidence that defendant had, or in the exercise of reasonable care should have had, knowledge that the car designated by the defendant in which to ship this cattle feed contained a poisonous substance known as white

lead, and that when it designated said car for use by the plaintiffs, it had, or should have had, knowledge of the purposés for which it was intended.  Therefore, as already stated, it was its duty, as a matter of law, to anticipate the consequences that might naturally and properly flow from its act in furnishing such car to the consignor for shipment of the cattle feed.  We are further of the opinion that there was evidence from which the jury might reasonably have inferred that the injury sustained by the plaintiffs, for which damages are sought, was the consequence that the defendant should have anticipated would naturally and probably flow from the act complained of, and furthermore, that there was no evidence of the intervention of an independent agency contributing to said injury.

Defendant cannot shield itself from responsibility by claiming that the plaintiffs were not parties to the contract ûnder which this car was furnished, because defendant was charged with the knowledge that not only the person with whom it had contracted might sustain injury, but that any other person who would buy the feed transported in said car would sustain injury.  Defendant was a common carrier, charged, under the law of our State, with the duty to furnish suitable cars for the transportation of persons and their property; and plaintiffs, purchasing said cattle feed at Wheeling, had the right to believe that defendant had performed such duty.

Defendant further contends that the consignor, with whom it had contracted for furnishing the car in question, had taken upon itself the duty of cleaning the car, thereby relieving it of any responsibility in connection therewith.  The only evidence to support such contention was that of two employees of the consignor who testified that they always cleaned the cars furnished for cattle feed, and that on the occasion in question they cleaned the car with shovels and brooms.  This testimony, however, was not evidence of an agreement

on the part of the consignor to clean the car, nor was it conclusive on the question whether or not the car was clean when loaded, but was merely evidence of facts which might have been taken into consideration by the jury had they been permitted to pass upon the issues. Moreover, even though the consignor had agreed to clean said car, that would not relieve the defendant, as far as the plaintiffs are concerned, of its duty, imposed by law, to furnish a car suitable for the purpose for which it was intended. The act of the consignor in cleaning the car was the act of the defendant. *Chicago & A. R. Co. v. Davis,* 159 Ill. 53, 58.

Defendant further maintains that plaintiffs had knowledge of the presence of this whitish substance in the bottom of the car and in the cattle feed removed therefrom; that in failing to take measures to ascertain the nature thereof, they were not in the exercise of ordinary care, thereby contributing to the injuries sustained. On this point, taking into consideration the evidence that three persons besides the plaintiffs, who had noticed this whitish substance on the bottom of the car and in the refuse, bought it for the purpose of feeding the same to their cattle, and did so, the question whether or not plaintiffs acted as ordinarily prudent men would have acted under like circumstances, was also one of fact for the jury and not a question of law for the court.

Defendant further contends that, this being an action to recover damages for an injury arising out of the sale of feed for animal consumption, the rule of *caveat emptor* applies, and that under the facts in evidence the plaintiffs cannot recover. In our view of the issues as heretofore expressed, this contention is without force.

For the reasons hereinabove assigned, we are of the opinion that the issues should have been submitted to the jury, and that the trial court erred in directing a

verdict for the defendant.   Accordingly, the judgment
will be reversed and the cause remanded.

*Reversed and remanded.*